# SATTERLEE STEPHENS BURKE & BURKE LLP

230 PARK AVENUE
NEW YORK, NY 10169-0079
(212) 818-9200
FAX (212) 818-9606

www.ssbb.com

51 JOHN F. KENNEDY PARKWAY
FIRST FLOOR WEST
SHORT HILLS, NJ 07078-2713
(973) 218-2509
FAX (973) 218-2401

June 28, 2013

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 07/08/2013
```

<u>By Electronic Mail</u>

Hon. Jesse M. Furman, U.S.D.J.
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:  *In re Standard & Poor's Rating Agency Litigation*, No. 13-MD-2446 (JMF)
     *Mississippi ex rel. Hood v. McGraw-Hill Cos.*, No. 11-CV-343 (S.D. Miss.)

Dear Judge Furman:

We represent Moody's Corporation and Moody's Investors Service, Inc. (together, "Moody's"), defendants (along with Standard & Poor's ("S&P")) in *Mississippi ex rel. Hood v. McGraw-Hill Cos., Inc.*, No. 11-CV-343 (S.D. Miss.) (the "Mississippi Action"), one of the constituent actions in the above-referenced MDL. The Mississippi Action is the only action in this MDL to name Moody's as a defendant. Pursuant to Section IV of Order No. 1 of this Court, dated June 12, 2013, we write to provide the Court with the requested status letter regarding the Mississippi Action.

(1)  **Nature of the Action.** The Mississippi Action is brought by the Attorney General of Mississippi, on behalf of the state, against S&P and Moody's asserting claims under the Mississippi Consumer Protection Act ("MCPA"), Miss. Code. Ann. § 75-24-1 *et seq.*, and common law unjust enrichment. The Attorney General ("AG") alleges that each of the rating agencies has violated the MCPA by misrepresenting its rating of structured finance securities as "objective and independent" and by misrepresenting its "competence" to rate structured finance securities. The complaint seeks civil penalties, injunctive relief and "other equitable relief pursuant to Miss Code. Ann. § 75-24-11," which provides for such additional judicial relief "including restitution, as may be necessary to restore to any person in interest any monies or property ... which may have been acquired by means of any practice prohibited by" the MCPA. See Compl. (Dkt. # 1-1) ¶ 2; Am. Compl (Dkt. # 27) ¶ 2. As originally filed, the complaint also sought punitive damages; these were removed by the AG in an amended complaint filed in response to defendants' request for discovery. See Compl., Prayer for Relief.

SATTERLEE STEPHENS BURKE & BURKE LLP

June 28, 2013

The complaint was originally filed in Mississippi Chancery Court on May 10, 2011. Moody's and S&P removed the complaint to the Southern District of Mississippi on June 7, 2011, citing jurisdiction under both regular diversity and the Class Action Fairness Act ("CAFA").[1]

Moody's has not answered or otherwise responded to the complaint.[2] However, Moody's strongly denies that its rating processes are anything but objective and independent or that it has misled consumers of its ratings in any way. Moody's also contends that the complaint is legally insufficient, including (without limiting the arguments that Moody's may ultimately rely upon) that it fails to state a claim under the MCPA and that any such claim is preempted by the Credit Rating Agency Reform Act, 15 U.S.C. § 78o-7, which prohibits states from regulating the substance of Moody's ratings or its ratings procedures, and which vests exclusive authority in the Securities and Exchange Commission to regulate how Moody's handles potential conflicts of interest.

(2) **Deadlines/Due Dates.** There are no currently outstanding deadlines or due dates. The initial Rule 16 conference was postponed by the court pending resolution of the MS AG's motion to remand.

(3) **Outstanding Motions.** There are two motions outstanding with respect to Moody's. First, the MS AG has moved to remand the action back to Mississippi state court, contending that the initial removal by Moody's and S&P was improper and that subject matter jurisdiction does not exist. There are a number of issues raised by the remand motion, but perhaps the central question is the extent to which the State, by seeking an explicitly restitutionary remedy under the MCPA, asserting the restitutionary remedy of unjust enrichment, and/or asserting a claim for punitive damages, rendered individual Mississippi consumers – the alleged harms to which would purportedly be remedied by this relief – "real parties in interest" whose Mississippi citizenship supports diversity jurisdiction.

Moody's principal (though not only) argument on jurisdiction is that, in addition to the injunctive relief and penalties sought, the State is actually seeking to adjudicate the claims of individual consumers, and that there are likely more than 100 such claims, rendering this a "mass action" under CAFA, 28 U.S.C. § 1332(d)(2), (11). The United States Court of Appeals for the Fifth Circuit has endorsed this interpretation in another case brought by the Attorney General. *See Mississippi ex rel. Hood v. AU Optronics Corp.*, 701 F.3d 796 (5th Cir. 2012), *cert. granted*, 2013 WL 655204 (May 28, 2013). The Supreme Court has granted certiorari to consider the issue.

Also key is the question of the extent to which the State's post-removal amendment of its complaint and/or purported (though ambiguous) disclaimers of some of this relief should be

---

[1] S&P subsequently filed a supplemental notice of removal asserting federal question jurisdiction (as it did in all of the other cases in this MDL). Moody's did not join this notice.

[2] By agreement of the parties, the Court ordered that Moody's and S&P's responses to the complaint would not be due until after determination of the MS AG's motion to remand. *See* Dkt. # 14.

SATTERLEE STEPHENS BURKE & BURKE LLP

June 28, 2013

considered by the Court in determining jurisdiction. See *Yong Qin Luo v. Mikel*, 625 F.3d 772, 776 (2d Cir. 2010).

The remand motion has not yet been fully briefed. Specifically, Moody's and S&P have not filed opposition briefs, and instead filed a motion for remand-related discovery (and an extension to file opposition briefs following completion of that discovery). The discovery sought goes to, *inter alia*, the identity and number of Mississippi consumers allegedly harmed by Moody's and S&P's purported practices, the amount of harm allegedly incurred, and the nature of the relief sought by the State (other than civil penalties and injunctive relief). These facts bear on not only the real-party-in-interest question but on the numerosity and amount-in-controversy requirements under CAFA.

The AG has opposed the request for discovery. This motion has been fully briefed, including oral argument and supplemental letter briefs.[3] The Court had not decided the motion, however, as of the time of the MDL transfer. Once any discovery is complete, opposition briefs on the motion to remand will still need to be filed.

Moody's suggests, however, that the Court may not need to delve into these jurisdictional issues at all, and certainly need not do so in the first instance. Clearly, all parties agree that the Court will have to determine whether the federal question jurisdiction asserted by S&P in all of the removals is valid. If the Court determines that it is not, then the Mississippi Action will be the only action remaining in federal court, and the MDL will effectively be over (i.e., it will then be appropriate to remand back to S.D. Miss.). If the Court determines that it is valid, it is unclear why there will be any need for a determination as to whether S&P can also assert diversity/CAFA jurisdiction over the Mississippi claims. In that case, the primary reason for the MDL Panel's refusal to sever the claims against Moody's – to avoid the possibility of conflicting rulings on remand (Transfer Order, at 2) – will be satisfied, and Moody's contends it will then also be appropriate for the Court to suggest remand back to the Southern District of Mississippi, as anticipated by the MDL Panel (discussed below in (7)). Hence it is Moody's suggestion that the Court defer consideration of the Mississippi-only jurisdictional issues unrelated to federal question jurisdiction until after it has made a determination of the federal question jurisdictional issues common to all of the actions in the MDL.

As noted above, the Supreme Court has granted certiorari to review the removability of suits such as this one under CAFA. The petitioner's brief is due July 22; the respondent's brief is due September 3. No date appears to have been set for oral argument yet, though based on the timing it appears likely to be before year-end.

(4) **Discovery.** As noted above, Moody's has requested remand-related discovery, the motion for which was still pending as of the MDL transfer to this Court. The State largely refused to answer the discovery requests already made (other than to claim that it was not "seeking financial relief payable to individual consumers").

---

[3] Some of these filings are not currently on the S.D. Miss. docket sheet but can of course be supplied to the Court on its request.

3

SATTERLEE STEPHENS BURKE & BURKE LLP

June 28, 2013

   **(5)** **Settlement Discussions.** There have been no substantial settlement discussions in this action.

   **(6)** **Related Cases.** There are no directly related cases pending against Moody's in any court. There is an action by the State of Connecticut, making broadly similar allegations under the Connecticut Unfair Trade Practices Act, currently pending in Connecticut Superior Court. This action is separate from, and not consolidated with, the one brought by Connecticut against S&P. The two actions are proceeding on separate discovery tracks and have had differing motion practice to date.

   **(7)** **Other information.** As the Court may be aware, Moody's originally asked the MDL Panel to sever the claim against Moody's and leave it in the Southern District of Mississippi. This is because Moody's believed, and still believes, that there is no substantial factual overlap between the claim against it and the claim(s) against S&P. The claim against S&P is that there is a discrepancy between S&P's statements and S&P's ratings practices; the claim against Moody's turns on <u>Moody's</u> statements and <u>Moody's</u> practices. There is no claim of concerted activity between the two; nor is any relief sought jointly against the agencies. Other than background issues about structured finance, there is unlikely to be any significant factual overlap or any significantly overlapping discovery. Moreover, because Moody's is not named as a defendant in any of the other cases, a separate discovery track for Moody's will have to be employed. There is, in other words, little if any efficiency to be gained by including Moody's in this MDL.

   In its transfer order, the Panel of course disagreed, but did so largely because of the potential for inconsistent remand decisions. *See* Transfer Order, at 2. As already discussed, Moody's believes that it will be unnecessary for the Court to reach the diversity/CAFA jurisdictional issues. But if the Court should ultimately reach the issues and determine that jurisdiction is proper, then the remand issues having been decided, it is likely that Moody's will ask this Court to consider suggesting remand to the Panel. *See id.* ("If the case remains in federal court after the remand issue is resolved, the transferee judge can suggest Section 1407 remand of the claims against Moody's at that time."). Moody's may also move to sever the claims completely under Rule 20 and 21, as there is no common transaction, occurrence, or series thereof alleged.

   We hope the foregoing answers the Court's questions, and of course if there are other questions we are available at the Court's convenience. We look forward to meeting with the Court at the initial conference on July 11.

                Sincerely,

                Glenn C. Edwards

cc:  All Counsel

1700088_1