CAHILL GORDON & REINDEL LLP
EIGHTY PINE STREET
NEW YORK, NY 10005-1702

| | | | | |
|---|---|---|---|---|
| FLOYD ABRAMS | CHARLES A. GILMAN | TELEPHONE: (212) 701-3000 | ANN S. MAKICH | HOWARD G. SLOANE |
| L. HOWARD ADAMS | STEPHEN A. GREENE | FACSIMILE: (212) 269-5420 | JONATHAN I. MARK | JOSIAH M. SLOTNICK |
| ROBERT A. ALESSI | JASON M. HALL | | BRIAN T. MARKLEY | RICHARD A. STIEGLITZ JR. |
| HELENE R. BANKS | WILLIAM M. HARTNETT | | WILLIAM J. MILLER | SUSANNA M. SUH |
| ANIRUDH BANSAL | CRAIG M. HOROWITZ | 1990 K STREET, N.W. | NOAH B. NEWITZ | ANTHONY K. TAMA |
| LANDIS C. BEST | DOUGLAS S. HOROWITZ | WASHINGTON, DC 20006-1181 | MICHAEL J. OHLER | JONATHAN D. THIER |
| SUSAN BUCKLEY | TIMOTHY B. HOWELL | (202) 862-8900 | ATHY A. O'KEEFFE | JOHN A. TRIPODORO |
| KEVIN J. BURKE | DAVID G. JANUSZEWSKI | FAX: (202) 862-8958 | DAVID R. OWEN | GLENN J. WALDRIP, JR. |
| JAMES J. CLARK | ELAI KATZ | | JOHN PAPACHRISTOS | HERBERT S. WASHER |
| BENJAMIN J. COHEN | THOMAS J. KAVALER | | LUIS R. PENALVER | MICHAEL B. WEISS |
| STUART G. DOWNING | BRIAN S. KELLEHER | AUGUSTINE HOUSE | DEAN RINGEL | S. PENNY WINDLE |
| ADAM M. DWORKIN | DAVID N. KELLEY | 6A AUSTIN FRIARS | JAMES ROBINSON | COREY WRIGHT |
| JENNIFER B. EZRING | CHÉRIE R. KISER* | LONDON, ENGLAND EC2N 2HA | THORN ROSENTHAL | DANIEL J. ZUBKOFF |
| JOAN MURTAGH FRANKEL | EDWARD P. KRUGMAN | (011) 44.20.7920.9800 | TAMMY L. ROY | ADAM ZUROFSKY |
| JONATHAN J. FRANKEL | JOEL KURTZBERG | FAX: (011) 44.20.7920.9825 | JONATHAN A. SCHAFFZIN | |
| BART FRIEDMAN | ALIZA R. LEVINE | | JOHN SCHUSTER | |
| CIRO A. GAMBONI | JOEL H. LEVITIN | | MICHAEL A. SHERMAN | *ADMITTED IN DC ONLY |
| WILLIAM B. GANNETT | GEOFFREY E. LIEBMANN | WRITER'S DIRECT NUMBER | DARREN SILVER | |
| | | (212) 701-3621 | | |

February 18, 2014

Re: *In re Standard & Poor's Rating Agency Litigation*, No. 13-MD-2446 (JMF)

Dear Judge Furman:

McGraw Hill Financial, Inc. (f/k/a The McGraw-Hill Companies, Inc.) and Standard & Poor's Financial Services LLC (together, "S&P") respectfully submit this letter to request a conference to address two discovery disputes that have arisen in the above-captioned multidistrict litigation. We believe that the disputes discussed herein present threshold issues of significant consequence such that early judicial resolution will facilitate the parties' further discovery efforts. The parties have conferred on several occasions in an effort to resolve these disputes but have been unsuccessful.

### 1. The States Seek To Impose Improper Limits on Discovery

S&P has served materially identical document requests on each of the States. The term "State" as defined in the Requests encompasses any entity that "could claim, or has claimed, sovereign immunity from suit under the Eleventh Amendment to the United States Constitution." The State of Tennessee, like its counterparts, served responses (Exhibit A) objecting to this definition. (In order to focus the dispute, we address only Tennessee, whose counsel serves as Lead Counsel for the States, here; its objections are illustrative of the issue across cases.)

Tennessee asserts that, because it has "sued S&P in its sovereign enforcement capacity" and has "not brought a proprietary claim on behalf of any individual state agency," party discovery may only be directed to the Consumer Advocate and Protection Division of the Office of the Tennessee Attorney General and to the Division of Consumer Affairs of the Department of Commerce and Insurance. This position is irreconcilable with basic tenets of civil discovery. As is true in each of these civil actions, the party plaintiff in the Tennessee case is the State itself. Tennessee sues through its legal counsel, the Attorney General, but this does not make the Attorney General a party to the litigation any more than the Attorney General of the United States or the Department of Justice would be a party in a civil action commenced on behalf of the United States.

As a consequence of the extreme limits Tennessee seeks to place on its search for and production of discovery material, Tennessee refuses to search for or produce highly probative materials that are plainly in its custody and control. To take but a few examples:

- Tennessee alleges in its complaint that S&P's alleged misstatements regarding its independence and objectivity were material to and relied upon by, among others, Tennessee government regulators. (*E.g.*, Cpt. ¶¶ 24, 104.) S&P is entitled to test this allegation by taking discovery of State of Tennessee regulatory bodies, including insurance and other regulators, that the State claims were misled by S&P's statements, but Tennessee refuses to search for and produce such materials.

- Various agencies and instrumentalities of the State of Tennessee have touted, and continue to tout, credit ratings they receive from S&P. In at least one instance, a website operated by the State of Tennessee currently refers to S&P as an "independent rating service." Such statements and related materials are party admissions, and in any event they are plainly relevant and well within the scope of proper discovery, but Tennessee refuses to search for and produce such materials.

- The State of Tennessee issues, directly or through special-purpose entities, certain debt rated by S&P. S&P is entitled to explore in discovery the nature of internal communications and investor representations regarding those credit ratings, including any discussions of S&P's independence and objectivity that arise in that context, but Tennessee refuses to search for and produce such materials.

Tennessee, as a litigant in a civil action, is subject to the rules of discovery just as any other civil litigant would be. *See, e.g., United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958) ("The Government as a litigant is, of course, subject to the rules of discovery."); *Ghana Supply Commission v. New England Power Co.*, 83 F.R.D. 586, 595 (D. Mass. 1979) ("When an agency of government institutes suit, any obligation to disclose relevant information extends to the government *qua* government requiring disclosure of all documents in its possession, custody or control, not just those materials in the immediate possession of the particular agency-plaintiff.").

*United States v. American Telephone & Telegraph Co.*, 461 F. Supp. 1314 (D.D.C. 1978), makes these very points in the context of civil enforcement proceedings:

> [I]t is clear that the limited theory of the nature of the "plaintiff" advanced by the Department of Justice is unacceptable. This action, as its caption indicates, was brought not on behalf of the Department of Justice but on behalf of the United States of America. . . . In the vindication of broad economic policy, it simply makes no sense to hold that the Department of Justice, which essentially is a law office, alone comprises the United States. . . . The Attorney General, as the government's attorney and chief law enforcement officer is, to be sure, the official responsible for instituting and conducting the criminal and civil litigation of the United States. But neither he, nor the department he heads (much less the Antitrust Division), is the United States.

*Id.* at 1333-34; *see also United States v. National Broadcasting Co.*, 65 F.R.D. 415, 419 (C.D. Cal. 1974) ("[W]hile the Department of Justice upon proper authorization by the Attorney General brings antitrust actions, the Department is not the 'plaintiff.' The Department of Justice is the plaintiff's counsel.").

Tennessee's unduly crabbed view of its discovery obligations finds no support in the law. While S&P stands ready to work with Tennessee and the other States to address any concerns as to scope or burden, those conversations must proceed from the basic starting point that the States cannot simply exempt themselves from compliance with the federal discovery rules.

CAHILL GORDON & REINDEL LLP

### 2. The States' Computation of Damages Is Inadequate

Rule 26(a)(1)(A)(iii) requires each party to disclose "a computation of any category of damages claimed by the disclosing party." An initial computation need only be based on "information then reasonably available," Fed. R. Civ. P. 26(a)(1)(E), but this does not relieve a party of its obligation "to disclose to the other parties the best information then available to it." *U.S. Bank National Ass'n v. PHL Variable Insurance Co.*, No. 12 Civ. 6811, 2013 WL 5495542, at *3 (S.D.N.Y. Oct. 3, 2013). The States' Initial Disclosures (Exhibit B), in which all of the States joined, fail to satisfy this standard.

All of the States' claims for monetary relief are plainly within the scope of required disclosure. *Cf. Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) (disclosure obligation applies when party seeks "damages *or other monetary relief*" (emphasis added)). The States, however, have made no effort to provide the required computation as to any of their claims.

As to the equitable relief, the Initial Disclosures claim only that the States seek "equitable redress, including restitution and/or disgorgement of S&P's ill-gotten gains." This provides no more information than what is contained in the States' complaints. The States have made no attempt to describe, let alone to compute, what they consider to be S&P's "ill-gotten gains." The States assert that they lack sufficient information to provide a computation, but their Initial Disclosures are silent even as to the factors and method they will use to perform such a computation.

The Initial Disclosures are equally deficient in their description of the civil penalties they seek, observing only that "some states also seek statutory civil penalties, costs, and attorneys' fees, pre-judgment interest, and other state-specific remedies, as provided by their respective state statutes." Here again, the States make no effort to describe or elaborate on their theory of how purported individual violations of the relevant statutes will be identified or quantified.

Rule 26(a)(1)(a)(iii) requires much more than the rote repetition of complaint allegations that the States have provided. *See Austrian Airlines Oesterreichische Lufverkehrs Ag v. UT Financial Corp.*, No. 04 Civ. 3854, 2005 WL 977850, at *2 (S.D.N.Y. Apr. 28, 2005) ("[E]ven if plaintiff could not calculate its currency conversion damages at the time of its initial disclosure . . ., there is no reason that it did not disclose its currency conversion damage *theory*." (emphasis in original)).

The inadequacy of the Initial Disclosures is particularly egregious because these cases were filed over a year ago, and the States have, for much or all of that time, had access to millions of pages of S&P documents. Clarification of the States' basic theories of recovery is required, and it is critical if S&P is to have a fair opportunity to test the States' theories in discovery.

\* \* \*

S&P respectfully requests that Tennessee be required to fulfill its obligation to participate in the discovery to which it is properly subject as a party in this action, and that the States be required to bring their Initial Disclosures into compliance with Rule 26(a)(1)(A)(iii).

Respectfully submitted,

Floyd Abrams

Hon. Jesse M. Furman
United States District Court
   for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Centre Street, Room 2202
New York, New York 10007

BY ECF

cc:    Olha N.M. Rybakoff
       Tennessee Attorney General's Office
       P.O. Box 20207
       Nashville, TN 37202-0207

       *Lead Counsel for the States*

       Gregory C. Strong, Esq.
       Delaware Department of Justice
       820 N. French St. 5th Floor
       Wilmington, DE 19801

       *Liaison Counsel for the States*

       Joshua M. Rubins
       Satterlee, Stephens, Burke & Burke, LLP
       230 Park Avenue
       New York, NY 10169

       *Counsel for Moody's*