STATE OF TENNESSEE

# Office of the Attorney General



**ROBERT E. COOPER, JR.**
ATTORNEY GENERAL AND REPORTER

LUCY HONEY HAYNES
CHIEF DEPUTY ATTORNEY GENERAL

P.O. BOX 20207, NASHVILLE, TN 37202
TELEPHONE (615)741-3491
FACSIMILE (615)741-2009

LAWRENCE HARRINGTON
CHIEF POLICY DEPUTY

**Via Electronic Case Filing**                                                            February 21, 2014

Honorable Jesse M. Furman
United States District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

>       Re:     *In re: Standard & Poor's Rating Agency Litigation*, No. 13-MD-2446 (JMF)
>               This Document Applies To All Cases

Dear Judge Furman:

I write to the Court in response to S&P's letter dated February 18, 2014 requesting a conference regarding two purported discovery issues. The States believe S&P's request is premature and unwarranted for several reasons, and, therefore, should be denied.

    1.    <u>S&P May Not Obtain Party Discovery from Non-Party State Agencies</u>. S&P is insisting that the States produce documents outside their custody and control and is attempting to obtain documents from non-party state agencies under Rule 34 instead of Rule 45. The States served their responses to S&P's first request for documents on January 10, 2014. (*See, e.g.*, TN Responses, Doc. 75-1). On January 30, 2014, S&P set a meet and confer for February 5, 2014. Although the States asked S&P that day to describe its "specific areas of concern in advance of the meeting," S&P only told the States one hour before the meeting that it proposed "to focus principally on the Tennessee requests as an exemplar" and address "the effect of Tennessee's General Objections 4 and 5 on the scope of search and production." (Exhibit A).

S&P claims that because "the States" are the named plaintiffs, it can obtain Rule 34 discovery from all state agencies.[1] While the States explained that each State is governed by its own unique sovereign scheme, state attorney general enforcement actions are not brought on behalf of all state agencies. (Exhibit C). Notably, S&P has been unable to explain how its argument reconciles with the first paragraph in Tennessee's Complaint, which states that Tennessee's enforcement action "is brought through the Attorney General and at the request of the Director of the Division of Consumer Affairs of the Tennessee Department of Commerce and Insurance." ("DCA") (*See* Compl. ¶ 1, Case No. 1:13-cv-04100-JMF, Doc. 1).

S&P cites only *United States v. American Telephone & Telegraph Co.*, 461 F.Supp. 1314,

---

[1] While S&P downplays its definition of "State" in its letter, the definition it used in the discovery at issue here is extremely broad. (*See* Exhibit B).

1335 (D.D.C. 1978), in support of its "aggregated agencies" argument.[2] That case, however, supports the States' position because it held that courts may not permit party discovery from federal agencies across different branches of government. The same court more recently revisited this issue in the context of state enforcement actions and refused to apply its *AT&T* holding to state attorneys general and other state agencies (including Tennessee). *Colorado v. Warner Chilcott Holdings Co. III, Ltd.*, No. 1:05-cv-02182-CKK-AK, slip op. at 5 (D.D.C. May 8, 2007) (Exhibit D).

Similarly, in *United States v. American Express Co.*, C.A. No. 1:10-04496-NGG-RER (E.D.N.Y. July 29, 2011) (Exhibit E), state attorneys general (including Tennessee) brought antitrust actions against American Express to enjoin unlawful conduct. The court rejected the defense argument that all state government agencies were subject to party discovery and held that "[u]nlike the executive branch agencies and DOJ in *AT&T*, the State Attorneys General exercised authority independent of the State Governors. In other words, the State Attorneys General could not force the separate state agencies to produce documents." Slip op. at 3. Notably, the court recognized that because the Tennessee Attorney General is appointed by the Tennessee Supreme Court, "the Attorney General also serves independently of the Governor." *Id.* n 5 (citing TN CONST. ART. 6, § 5).[3] The court relied on *New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.*, 233 F.R.D. 259 (N.D.N.Y. 2006) ("*Amtrak*") in refusing to aggregate the separate state agencies, noting that "[l]egally, the State Attorneys General have no more way of compelling production than Amex does, if an agency refuses to cooperate." *American Express*, slip op. at 5. Other cases also reach the same result. *See Amtrak*, 233 F.R.D. at 268 (New York Department of Transportation did not have control over the Office of the State Comptroller); *United States v. Davis*, 140 F.R.D. 261, 263 (D.R.I. 1992) (executive branch agencies were not required to produce documents in the possession of Congress); *People ex rel. Lockyer v. Superior Court*, 19 Cal. Rptr. 3d 325 (Cal. Ct. App. 2004) (court refused to uphold order compelling the California Attorney General to produce documents from non-party state agencies in a consumer protection enforcement action).[4]

2. <u>The States' Initial Disclosures Are Adequate.</u> S&P also complains about the lack of damages computations in the States' Initial Disclosures, which were served on November 18, 2013. S&P again misapprehends the distinctions between private litigation and consumer protection enforcement cases which seek primarily equitable relief. During several discussions, the States explained to S&P that they were not seeking damages (and in some cases are not authorized to do

---

[2] Tennessee understands that some MDL States have already notified S&P that they are authorized to represent one or more state agencies for Rule 34 purposes, and indeed, Tennessee advised S&P it would represent its client agency, the DCA, for Rule 34 purposes. Other States are unable to represent any state agencies in their law enforcement proceedings. All States, including Tennessee, agreed to produce responsive documents to S&P from the agencies they are legally authorized to represent in this action.

[3] S&P sets forth so-called "examples" of how such agency information is allegedly relevant to the issue of "reliance." S&P misapprehends consumer protection law because reliance is not an element of Tennessee's and the other States' claims. Case law uniformly holds that States do not need to prove traditional fraud elements such as intent, reliance, and injury in a consumer protection enforcement proceeding. *See, e.g., Tucker v. Sierra Builders*, 180 S.W.3d 109, 116 (Tenn. Ct. App. 2005) ("A deceptive act or practice is one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as to a matter of fact."); *Massachusetts Mut. Life Ins. Co. v. Superior Court*, 97 Cal.App.4th 1282, 1289, 1291 (2002) (Purpose of court restitution orders in unfair practice cases as so important that courts are authorized to order restitution without individualized proof of deception, reliance or injury). *See also United States v. Papercraft Corp.*, 540 F.2d 131, 141 (3d Cir. 1976) (Trial court did not err in equating corporation's profits with the extent of public harm). Similarly, purported "admissions" S&P thinks it might find are irrelevant, because "the law is violated if the first contact is secured by deception," even though the true facts are later made known to the buyer. *Exposition Press, Inc. v. FTC*, 295 F.2d 869, 873 (2d Cir. 1961).

[4] These cases were brought to S&P's attention a few weeks ago in Illinois' case against S&P. (Exhibit F).

so), but were primarily seeking injunctive relief, along with costs, fees, and ancillary equitable relief including disgorgement of profits, restitution, and remedial civil penalties.[5]

The States' Initial Disclosures set forth all of the above categories of equitable relief, but S&P continues to insist the States must provide damages computations now. The States told S&P that their equitable claims could not be quantified this early in the proceedings, but would depend on financial discovery from S&P, and would likely require expert assistance. The States told S&P they would promptly supplement their Initial Disclosures as such information became known to them.[6]

The cases cited by S&P are misplaced because they are private breach of contract cases, which are easily distinguishable from state consumer protection enforcement actions. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006) (plaintiff failed to disclose "lost profits" as a damages category); *Austrian Airlines Oesterreichische Lufverkerhrs Ag v. UT Fin. Corp.*, No. 04 Civ. 3854RCCAJP, 2005 WL 977850, at *1-2 (S.D.N.Y. April 28, 2005) (plaintiff failed to disclose its "currency conversion damage theory"). Breach of contract cases, by their nature, include categories of damages and other relief that are easily computed, because the amounts of money at issue are either known or easily discovered. The States, however, require financial discovery from S&P to develop their ancillary equitable relief. Certain types of claims, such as patent infringement, punitive damages, and emotional distress, are ill-suited for the type of damages disclosures contemplated by Rule 26(a)(1)(A)(iii), especially when the information necessary to evaluate such claims lies exclusively within the opposing party's control.[7] This result relates to the general recognition that initial disclosure obligations must be based on the information then reasonably available to the party. Fed. R. Civ. P. 26(a)(1)(A)(iii) and (E).[8]

The States' Initial Disclosures did not include damages computations because, contrary to S&P's implications, S&P has not yet produced its financial information to the States.[9] In addition, expert assistance will likely be required to enable the States to make meaningful sense of what will undoubtedly prove to be a complex financial picture. As recently noted by this Court, "[w]here ... damages are not the product of a simple mathematical calculation and require expert testimony, the damages calculations need not be produced with the plaintiff's Rule 26(a)(1) disclosures and may be produced as part of the party's Rule 26(a)(2) disclosures." *US Bank N.A. v. PHL Variable Ins. Co.*, No. 12 Civ. 6811, 2013 WL 5495542, at *3 (S.D.N.Y. Oct. 3, 2013) (citation omitted).

3.   <u>Conclusion</u>. The States respectfully submit that a conference is not warranted as S&P has failed to provide any plausible basis in law or in fact for the claims it makes here. As such, S&P's request should be denied and the parties should continue to proceed with discovery as planned.

---

[5] *See, e.g.*, *State ex rel. Guste v. Orkin Exterminating Co.*, 528 So.2d 198, 202 (La. Ct. App. 1988) (Attorney General's request for restitution is only ancillary); *People v. Pacific Land Research Co.*, 569 P.2d 125, 129 (Cal. 1977) (same).

[6] The purpose of such damages disclosure is to inform a party as to its potential exposure in the case. *See, e.g.*, 6-26 P. HIGGINBOTHAM, MOORE'S FEDERAL PRACTICE ¶ 26.22[4][c][ii] (2013). Thus, in order to facilitate a way for S&P to gauge its potential exposure in this case, the States informed S&P that the equitable remedies of restitution and disgorgement could be defined as roughly equivalent to the gains S&P's realized during the time periods at issue here.

[7] *See* 6-26 P. HIGGINBOTHAM, MOORE'S FEDERAL PRACTICE ¶ 26.22[4][c][ii] (2013) (and cases cited therein).

[8] The Advisory Committee Notes on the 1993 Amendments of Fed. R. Civ. P. 26 also instructs that the obligation to disclose a damages computation "applies only with respect to documents then reasonably available to it. . . . Likewise, a party would not be expected to provide a calculation of damages which, as in many patent infringement actions, depends on information in the possession of another party or person."

[9] S&P's letter claims that the inadequacy of the States' Initial Disclosures is "egregious" because the States have had "millions" of S&P documents for over a year. S&P fails to mention that these documents do not contain S&P's internal financial data and that so far, S&P has refused to produce a single document in response to the States' discovery requests.

Respectfully submitted,

*[signature]*

Olha N.M. Rybakoff
Lead Counsel

cc: All Counsel of Record (via ECF)