CAHILL GORDON & REINDEL LLP

EIGHTY PINE STREET

NEW YORK, NY 10005-1702

| | | | | |
|---|---|---|---|---|
| FLOYD ABRAMS | CIRO A. GAMBONI | | JOEL H. LEVITIN | JOHN SCHUSTER |
| L. HOWARD ADAMS | WILLIAM B. GANNETT | **TELEPHONE: (212) 701-3000** | GEOFFREY E. LIEBMANN | MICHAEL A. SHERMAN |
| ROBERT A. ALESSI | CHARLES A. GILMAN | **FACSIMILE: (212) 269-5420** | ANN S. MAKICH | DARREN SILVER |
| HELENE R. BANKS | STEPHEN A. GREENE | | JONATHAN I. MARK | HOWARD G. SLOANE |
| ANIRUDH BANSAL | JASON M. HALL | **1990 K STREET, N.W.** | BRIAN T. MARKLEY | JOSIAH M. SLOTNICK |
| LANDIS C. BEST | WILLIAM M. HARTNETT | **WASHINGTON, DC 20006-1181** | WILLIAM J. MILLER | RICHARD A. STIEGLITZ JR. |
| SUSAN BUCKLEY | CRAIG M. HOROWITZ | **(202) 862-8900** | NOAH B. NEWITZ | SUSANNA M. SUH |
| KEVIN J. BURKE | DOUGLAS S. HOROWITZ | **FAX: (202) 862-8958** | MICHAEL J. OHLER | ANTHONY K. TAMA |
| JAMES J. CLARK | TIMOTHY B. HOWELL | | ATHY A. O'KEEFFE | JONATHAN D. THIER |
| BENJAMIN J. COHEN | DAVID G. JANUSZEWSKI | | DAVID R. OWEN | JOHN A. TRIPODORO |
| SEAN M. DAVIS | ELAI KATZ | **AUGUSTINE HOUSE** | JOHN PAPACHRISTOS | GLENN J. WALDRIP, JR. |
| STUART G. DOWNING | THOMAS J. KAVALER | **6A AUSTIN FRIARS** | LUIS R. PENALVER | HERBERT S. WASHER |
| ADAM M. DWORKIN | BRIAN S. KELLEHER | **LONDON, ENGLAND EC2N 2HA** | KIMBERLY PETILLO-DÉCOSSARD | MICHAEL B. WEISS |
| ANASTASIA EFIMOVA | DAVID N. KELLEY | **(011) 44.20.7920.9800** | DEAN RINGEL | S. PENNY WINDLE |
| JENNIFER B. EZRING | CHÉRIE R. KISER* | **FAX: (011) 44.20.7920.9825** | JAMES ROBINSON | DAVID WISHENGRAD |
| JOAN MURTAGH FRANKEL | EDWARD P. KRUGMAN | | THORN ROSENTHAL | COREY WRIGHT |
| JONATHAN J. FRANKEL | JOEL KURTZBERG | | TAMMY L. ROY | DANIEL J. ZUBKOFF |
| BART FRIEDMAN | ALIZA R. LEVINE | | JONATHAN A. SCHAFFZIN | ADAM ZUROFSKY |

WRITER'S DIRECT NUMBER

(212) 701-3621

*ADMITTED IN DC ONLY

May 2, 2014

Re:   *In re Standard & Poor's Rating Agency Litigation*, No. 13-MD-2446 (JMF)
      *This Document Relates to All Actions*

Dear Judge Furman:

    I write on behalf of defendants McGraw Hill Financial, Inc. ("McGraw Hill") and Standard & Poor's Financial Services LLC ("SPFS"; together, "Defendants") in response to the States' April 29, 2014 letter (Dkt. 89, "Ltr.") regarding jurisdictional discovery.

    On March 6, 2014, I wrote to Your Honor proposing "to file a consolidated motion to dismiss under Rule 12(b)(2) now, with briefing on Rule 12(b)(6) issues to proceed (if necessary) on the current schedule after the pending remand motions are resolved." (Dkt. 78 at 3.) The Court instructed in a March 7, 2014 Order (Dkt. 80) that Defendants "should not file a motion on these issues now, but may file such a motion (if appropriate), within seven days of the Court's ruling on the pending motions." Shortly thereafter, apparently scrambling to find a basis for their assertion of personal jurisdiction, the States propounded the document requests now at issue (the "Requests").

    As the States concede, the Requests seek jurisdictional discovery – *i.e.*, "documents that will enable each Plaintiff State to clarify the nature and extent of S&P's business activities directed toward that State."[1] (Ltr. at 1.) The States also concede that a plaintiff has no automatic right to jurisdictional discovery, but rather is entitled to such discovery only if it has made "legally sufficient allegations of jurisdiction." (Ltr. at 2, quoting *Universal Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd.*, 2014 WL 1099222, at *2 (2d Cir. Mar. 21, 2014).)

    By raising the jurisdictional discovery issue by letter motion now, the States seek to gain a tactical advantage from the schedule the Court set for S&P's Rule 12(b)(2) motion. On one hand the States point to the Court's Order "Denying S&P's March 6, 2014 Letter" wherein we requested permission to file our Rule 12(b)(2) motion immediately (Ltr. at 1, n.1), and on the other hand they argue that their request for jurisdictional discovery should be granted because "S&P has not explained why it believes [the States'] allegations are insufficient." (Ltr. at 2.) All agree that the States' entitlement to jurisdictional discovery turns on the legal sufficiency of their jurisdictional

---

[1] The States allude in a footnote to the possibility that the Requests reach materials "unrelated to jurisdiction." (Ltr. at 2, n.6.) But, other than a cryptic and unexplained reference to "remedies analysis" at footnote 2, the States do not even assert that the Requests seek documents relevant to merits issues as opposed to jurisdictional issues. Such an assertion would be belied by an examination of the Requests themselves, which are clearly directed to a "contacts" inquiry.

CAHILL GORDON & REINDEL LLP

- 2 -

allegations. But the States seek to preempt this analysis by getting their letter motion requesting jurisdictional discovery on file before S&P is allowed to file its opening brief on the Rule 12(b)(2) motion. This is pure gamesmanship.

As we summarize here, the States have failed to satisfy the threshold requirement of "legally sufficient allegations of jurisdiction" that would entitle them to discovery. Therefore, the States' request should be denied (assuming the Court determines to resolve their application without awaiting full briefing on the Rule 12(b)(2) motion). We will set these points forth more fully in the brief we file in support of our Rule 12(b)(2) motion on the schedule previously set by the Court. (Alternatively, we are prepared to file that motion immediately upon request, and briefing could then proceed on the expedited schedule contemplated by the Court's March 7 Order.)

### Jurisdictional Discovery Is Unwarranted Because the States' Jurisdictional Allegations Are Legally Insufficient

The parties agree that the States are not entitled to conduct jurisdictional discovery unless their Complaints contain "legally sufficient allegations of jurisdiction." (Ltr. at 2, *see also Ehrenfeld* v. *Mahfouz*, 489 F.3d 542, 550 n.6 (2d Cir. 2007).) It is black letter law that "a plaintiff is not entitled to jurisdictional discovery to enable her to bolster an inadequate pleading if the defendant merely challenges the legal sufficiency of the jurisdictional allegations in the complaint, and does not place the factual basis for personal jurisdiction in issue." *Langenberg* v. *Sofair*, No. 03 Civ. 8339 (KMK), 2006 WL 2628348, at *6 (S.D.N.Y. Sept. 11, 2006) (internal quotation marks omitted).[2] The States' entitlement to jurisdictional discovery thus turns on the adequacy of their jurisdictional allegations.

Courts recognize two types of personal jurisdiction: general jurisdiction, which permits the exercise of jurisdiction over a defendant for any cause of action; and specific jurisdiction, which permits the exercise of jurisdiction over a defendant for causes of action arising from its forum contacts. *See Daimler AG* v. *Bauman*, 134 S. Ct. 746, 754 (2014). The States have failed to plead legally sufficient allegations of either general or specific jurisdiction.

### a. The States' Allegations of General Jurisdiction Are Legally Insufficient

The Supreme Court held unequivocally earlier this year that a corporation may only be subject to general jurisdiction consistent with constitutional Due Process limits in states where it is "at home." *Daimler*, 134 S. Ct. at 751 (quoting *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 131 S. Ct. 2846, 2851 (2011)). Save in "exceptional" circumstances not even arguably present here, a foreign corporation is "at home" only in its "place of incorporation and principal place of business." *Id.* at 760. It is undisputed that McGraw Hill is organized under the laws of New York, that SPFS is organized under the laws of Delaware, and that each has its principal place of business in New York. (*E.g.*, Tenn. Cplt. ¶¶ 21-22.) Thus, New York (and Delaware as to SPFS only) is the only state where Defendants are "at home" and the only state where they may be subjected to general jurisdiction.

For reasons unexplained, the States apparently view this straightforward application of *Daimler* as "specious." (Ltr. at 3.) But in recent months the Second Circuit has *twice* emphasized that the Supreme Court meant exactly what it said in *Daimler*, even using the "drastic and extraordinary"

---

[2] Defendants' challenge to personal jurisdiction does not put in question the accuracy of the States' jurisdictional allegations, only their legal sufficiency. There is simply no need to seek to substantiate factual allegations that are not in dispute for purposes of the Rule 12(b)(2) motion. *See In re Herald, Primeo & Thema Funds Securities Litigation*, No. 09 Civ. 289, 2011 WL 4056819, at *3 (S.D.N.Y. Sept. 8, 2011) (denying jurisdictional discovery where "there is no factual issue to be resolved concerning in personam jurisdiction"); *RSM Products Corp.* v. *Fridman*, 643 F. Supp. 2d 382, 402 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010) (denying jurisdictional discovery where plaintiffs "made no factual allegations which could be proven through additional discovery that would change the outcome of this issue").

CAHILL GORDON & REINDEL LLP

- 3 -

issuance of a writ of mandamus to correct a contrary district court decision.[3]  *See In re Roman Catholic Diocese of Albany, New York, Inc.*, 745 F.3d 30, 37-41 (2d Cir. 2014) (per curiam) ("Principal place of business and state of incorporation have the virtue of being unique—that is, each ordinarily indicates only one place – as well as easily ascertainable. For the Diocese, Vermont is neither and New York is both. . . . If the Diocese is at home in Vermont, it begs the question: how many homes might it have?"); *Sonera Holding B.V.* v. *Cukurova Holding A.S.*, ___ F.3d ___, 2014 WL 1645255, at *3-4 (2d Cir. Apr. 25, 2014) (per curiam) ("New York is neither Çukurova's place of incorporation nor its primary place of business. . . . [*Daimler* and *Goodyear*] make clear that even a company's engagement in a substantial, continuous, and systematic course of business is alone insufficient to render it at home in a forum.").

The only thing "specious" here is the States' unsupportable assertion that general jurisdiction over Defendants could exist in all 17 States so long as Defendants "regularly transact business" in those States (Ltr. at 2, quoting Tenn. Cplt. ¶ 24).  That is simply not the law after *Daimler*.  The States' allegations of general jurisdiction are facially insufficient as a matter of law and provide no basis for permitting discovery.

### b.  The States' Allegations of Specific Jurisdiction Are Legally Insufficient

For a court to exercise specific jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum state." *Walden* v. *Fiore*, 134 S. Ct. 1115, 1121 (2014).  "[A]s a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum state." *See J. McIntyre Machinery Ltd.* v. *Nicastro*, 131 S. Ct. 2780, 2788 (2011) (plurality); *see also Walden*, 134 S. Ct. at 1126 ("[T]he mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction.").

The States point to only two factual allegations that purport to support an exercise of specific jurisdiction (Ltr. at 2):

- "S&P rates structured finance securities issued by issuers located within Tennessee." (quoting Tenn. Cplt. ¶ 24); and

- "S&P . . . provid[ed] credit analysis to issuers located in Tennessee[,] and provid[ed] credit analysis for use by investors, government regulators, and others within the State of Tennessee." (quoting Tenn. Cplt. ¶ 259).

These allegations are insufficient to plead specific jurisdiction.  Taken as true, they at most plead that conduct by S&P reached issuers of securities and "consumers" of ratings located in Tennessee.  But the States do not allege that Defendants made any of the challenged statements about independence and objectivity in any of the States or that Defendants targeted the challenged statements to any of the States.  This is consistent with the States' own admissions that the challenged statements were not targeted at any of the States but instead were made to "the public at-large." *See, e.g.*, Ex. A, Tenn. Response to Defendants' First Interrogatories, No. 4 ("S&P's statements of objectivity and independence are public statements made to the public at-large, including Tennessee consumers.").  The States' allegations are therefore facially insufficient to plead specific jurisdiction. *See Hanson* v. *Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").

\* \* \*

The States' entitlement to pursue jurisdictional discovery turns on the question of the legal sufficiency of their jurisdictional allegations.  Therefore, the instant request should be denied outright (or held in abeyance until the Court considers the legal sufficiency of the States' jurisdictional allegations with the benefit of full briefing on Defendants' forthcoming Rule 12(b)(2) motion).

---

[3]  Commentators quickly recognized the sea change *Daimler* represents. *E.g.*, Leslie R. Bennett, *Daimler Decision Topples Longstanding New York Cases*, N.Y.L.J. (Jan. 24, 2014) ("*Daimler* has . . . radically undone and rearranged the application of general jurisdiction to foreign corporations in New York, and elsewhere.").

Cᴀʜɪʟʟ Gᴏʀᴅᴏɴ & Rᴇɪɴᴅᴇʟ ʟʟᴘ

- 4 -

Respectfully submitted,

Floyd Abrams

Hon. Jesse M. Furman
United States District Judge
United States District Court
  for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

VIA ECF

cc:      All Counsel of Record (by ECF)

Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------------x
IN RE:

STANDARD & POOR'S RATING AGENCY LITIGATION

                                                    13-MD-2446(JMF)


-----------------------------------------------------------------------------------x
*This Document Relates to:*

TENNESSEE, ex rel. COOPER

                           Plaintiff,                  1:13 Civ. 4098 (JMF)

      v.

MCGRAW-HILL COS., INC, et al.,

                           Defendants.
-----------------------------------------------------------------------------------x

**PLAINTIFF STATE OF TENNESSEE'S OBJECTIONS AND RESPONSES
TO THE FIRST SET OF INTERROGATORIES BY MCGRAW HILL FINANCIAL,
INC. AND STANDARD & POOR'S FINANCIAL SERVICES LLC TO TENNESSEE**

       Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff State of

Tennessee, *ex rel.* Robert E. Cooper, Jr., Attorney General and Reporter, on behalf of the

Division of Consumer Affairs of the Tennessee Department of Commerce and Insurance

("Plaintiff") hereby responds and objects to the First Set of Interrogatories by Defendants

McGraw Hill Financial, Inc. and Standard & Poor's Financial Services LLC (together, "S&P") to

Tennessee (the "Interrogatories").

## GENERAL OBJECTIONS AND RESPONSES

       1.     Plaintiff objects to the Interrogatories to the extent that they seek information

protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or

any other applicable legal privilege.

2.      Plaintiff objects to the Interrogatories to the extent that they seek information protected from disclosure by the common interest doctrine, the common interest privilege, the joint prosecution privilege, the law enforcement privilege, the deliberative process privilege, and/or any other applicable governmental enforcement privilege.

3.      Plaintiff objects to the Interrogatories to the extent that they seek confidential state agency information that is protected from public disclosure pursuant to statute or related confidentiality agreements and memoranda of understanding with federal regulators and civil enforcers.

4.      Plaintiff objects to the Interrogatories to the extent that the "Instructions" exceed the permissible scope of the Federal Rules of Civil Procedure or Local Rules of the Southern District of New York.

5.      Plaintiff objects to the Interrogatories to the extent that they seek information that exceeds the scope of Local Rule 33.3.

6.      Plaintiff objects to the Interrogatories to the extent that they purport to impose upon Plaintiff an obligation to search publicly available materials when such material is equally accessible to S&P, or would require Plaintiff to serve subpoenas on unrelated entities to obtain responsive information.

7.      Plaintiff objects to the Interrogatories to the extent that they call for legal conclusions or legal arguments.

8.      Plaintiff objects to the Interrogatories to the extent that they seek the production of information not relevant to the issues in this matter and not likely to lead to the discovery of admissible evidence.

2

9.      Plaintiff is not bound by the responses of any other state in this multi-district litigation. That certain information is or is not in the possession of another state, or is relevant to the specific claims of that state, does not mean that Plaintiff is necessarily in possession of such information, or that such information is relevant to Plaintiff's specific claims.

10.      The specific and general responses are made solely for the purpose of this action. Each response is subject to all objections as to competence, relevance, privilege, materiality, propriety, admissibility, and any and all other objections that would require the exclusion of any evidence if any requests were made of, or any testimony were offered by, a witness present and testifying at trial. All such objections are reserved, and may be interposed at any time prior to or during the trial in this matter.

11.      That Plaintiff has responded to any Interrogatory, or any part thereof, is not intended, and shall not be construed, as a waiver of all, or any part, of any objection to any such Interrogatory.

12.      Plaintiff reserves the right to amend any of the specific responses set forth below in light of information developed or learned on a subsequent date.

13.      Plaintiff objects to S&P's definition of "State AG" as vague and overly broad because it includes unidentified agencies or entities that are not subject to party discovery, and therefore, not properly subject to Interrogatories. *See* Fed. R. Civ. P. 33(a). The Interrogatories' definition of "State AG" misrepresents Plaintiff's position as set forth in General Objections Nos. 5 and 6 to the First Request for the Production of Documents by Defendants McGraw Hill Financial, Inc. and Standard & Poor's Financial Services LLC (the "First Requests").

14.     The Interrogatories are not limited in time, which makes them overbroad and burdensome.  Plaintiff will provide responses for the relevant time period as stated in its Complaint, 2001 to the present.

15.     The responses made herein are made to the best of Plaintiff's present knowledge after a reasonably diligent search for responsive information.  Plaintiff will supplement its responses as required by the Federal Rules of Civil Procedure and expressly reserves its right to supplement or amend its answers if and as appropriate.

16.     Each of the foregoing General Objections and Responses is incorporated by reference into each of the Specific Objections and Responses.

## SPECIFIC OBJECTIONS AND RESPONSES

**Interrogatory No. 1:**

Identify each and every individual employed by the State who, to the State AG's knowledge, had any role in the decision to initiate this lawsuit.

**Answer to Interrogatory No. 1:**

Plaintiff repeats and restates its General Objections to this Interrogatory.  Plaintiff objects to this Interrogatory on the ground that it seeks information that is protected by the work product doctrine and the attorney-client privilege.  Plaintiff further objects to this Interrogatory on the ground that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**Interrogatory No. 2:**

Identify each and every Citizen, Buyer, Investor, Consumer, Government Regulator or Market Participant within the State who, to the State AG's knowledge, claims to have been misled by any of the statements by S&P identified in the Complaint.

4

**Answer to Interrogatory No. 2:**

Plaintiff repeats and restates its General Objections to this Interrogatory. Plaintiff reiterates its General Objections No. 8 and 10 above, in that the information requested may not be relevant for all purposes to which S&P might seek its admission at trial. Plaintiff objects to this Interrogatory on the grounds that the meaning of the term "misled" is not defined and therefore the Interrogatory is vague, ambiguous, and unduly burdensome. Furthermore, Plaintiff objects on the grounds that the meaning of the terms "Citizen," "Buyer," "Investor," "Consumer," "Government Regulator," and "Market Participant" are not defined by S&P other than references to their general use in Plaintiff's Complaint in reference to S&P's conduct and, therefore, the Interrogatory is vague, ambiguous, and unduly burdensome. In particular, Plaintiff is not obligated to prove the elements of its claim with evidence from any person who was misled by statements made by S&P. Subject to and without waiving these objections, and after a reasonable inquiry, Plaintiff is unaware of any persons or entities responsive to this Interrogatory. Plaintiff will supplement this response as additional information becomes available or is produced in discovery. Moreover, discovery is ongoing and S&P has not fully responded to Plaintiff's discovery requests.

**Interrogatory No. 3:**

Identify each and every Citizen, Buyer, Investor, Consumer, Government Regulator or Market Participant within the State who has lodged with the State AG a formal or informal complaint, grievance, concern, inquiry or demand concerning S&P.

**Answer to Interrogatory No. 3:**

Plaintiff repeats and restates its General Objections to this Interrogatory. Plaintiff objects that this Interrogatory is overbroad and burdensome in that it requests complaints that go beyond the scope of the issues under contention in this action, namely S&P's business of rating

5

structured finance securities. In addition, Plaintiff reiterates its General Objections No. 8 and 10

above, in that the information requested may not be relevant for all purposes to which S&P

might seek its admission at trial. In particular, Plaintiff is not obligated to prove the elements of

its claim with evidence from any person who was misled by statements made by S&P or to base

its enforcement actions on the existence of such complaints. In addition, Plaintiff objects to this

Interrogatory on the grounds that the meaning of the terms "lodged," "complaint," "grievance,"

"concern," "inquiry," and "demand" are not defined and therefore the Interrogatory is vague,

ambiguous, and unduly burdensome. Furthermore, Plaintiff objects on the grounds that the

meaning of the terms "Citizen," "Buyer," "Investor," "Consumer," "Government Regulator,"

and "Market Participant" are not defined by S&P other than references to their general use in

Plaintiff's Complaint in reference to S&P's conduct and, therefore, the Interrogatory is vague,

ambiguous, and unduly burdensome. Subject to and without waiving the aforementioned

objections, Plaintiff asserts that the Tennessee Attorney General's Office does not process

consumer complaints and, in the ordinary course of business, any consumer complaints or

correspondence received by the Tennessee Attorney General's Office are forwarded to its client

agency, the Division of Consumer Affairs. Subject to and without waiving these objections, and

after a reasonable inquiry, Plaintiff is unaware of any persons or entities responsive to this

Interrogatory. Plaintiff will supplement this response as additional information becomes

available or is produced in discovery. Moreover, discovery is ongoing and S&P has not fully

responded to Plaintiff's discovery requests.

**Interrogatory No. 4:**

The Complaint alleges: "There are many buyers / investors of structured finance
securities, government regulators and other consumers located in Tennessee that expect and
depend on S&P to independently and objectively fulfill its self-described role as alleged above."
(Compl. ¶ 64.) Identify, to the full extent of the State AG's knowledge and awareness of such,

all "[b]uyers / investors of structured finance securities, government regulators and other consumers located in Tennessee that expect and depend on S&P to independently and objectively fulfill its self-described role."

## Answer to Interrogatory No. 4:

Plaintiff repeats and restates its General Objections to this Interrogatory. Plaintiff reiterates its General Response No. 8 above, in that the information requested may not be relevant for all purposes to which S&P might seek its admission at trial. In particular, reliance on S&P's false representations that its ratings of structured finance securities were independent and objective and not affected by financial interests of S&P by investors, regulators, and consumers is not an element of Plaintiff's claim. Furthermore, Plaintiff is not obligated to prove the elements of its claim with evidence that any person relied on S&P's misrepresentations.

Subject to and without waiving this objection, Plaintiff responds that many statutory, regulatory, and portfolio governance rules only permit investments in structured finance securities that have received specified ratings given by nationally recognized rating service such as S&P. *See, e.g.*, Tenn. Code Ann. § 9-4-602; http://www.treasury.state.tn.us/lgip/documents/policy.pdf. Furthermore, banks are subject to regulation and capital adequacy requirements that are imposed based on the credit ratings of their holdings. *E.g.*, 12 C.F.R. pt. 3 (Comptroller of the Currency); 12 C.F.R. pts. 208 & 225 (Federal Reserve System); 12 C.F.R. pt. 325 (F.D.I.C.); 12 C.F.R. pts. 559, 560, 563, & 567 (Office of Thrift Supervision).

S&P's statements of objectivity and independence are public statements made to the public at-large, including Tennessee consumers. This is true even where S&P's ratings for these structured finance securities were not widely available to the public. Furthermore, Plaintiff notes that if S&P's credit ratings of structured finance securities do not represent its independent and objective opinion regarding the credit of the security, then the credit rating would have no utility.

Plaintiff will supplement this response as additional information becomes available or is produced in discovery. Moreover, discovery is ongoing and S&P has not fully responded to Plaintiff's discovery requests.

**Interrogatory No. 5:**

Identify, to the full extent of the State AG's knowledge and awareness of such, each and every Citizen, Buyer, Investor, Consumer, Government Regulator or Market Participant within the State who depends on S&P to manage conflicts of interest or interprets the statements by S&P identified in the Complaint to understand that it does so.

**Answer to Interrogatory No. 5:**

Plaintiff repeats and restates its General Objections to this Request. Plaintiff reiterates its General Objections No. 8 and 10 above, in that the information requested may not be relevant for all purposes to which S&P might seek its admission at trial. Plaintiff objects to this Interrogatory as vague and overbroad, in that it does not cite to any particular statement by S&P as to which the Interrogatory is directed. Furthermore, Plaintiff objects on the grounds that the meaning of the terms "Citizen," "Buyer," "Investor," "Consumer," "Government Regulator," and "Market Participant" are not defined by S&P other than references to their general use in Plaintiff's Complaint in reference to S&P's conduct and, therefore, the Interrogatory is vague, ambiguous, and unduly burdensome. In particular, reliance on S&P's false misrepresentations that its ratings of structured finance securities were independent and objective and not affected by financial interests of S&P by investors, regulators, and consumers is not an element of Plaintiff's claim. In particular, Plaintiff is not obligated to prove the elements of its claim with evidence from any person who relied on false representations by S&P that its ratings of structured finance securities were independent and objective and not affected by financial interests of S&P. Subject to and without waiving this objection, Plaintiff refers S&P to its answer to Interrogatory No. 4. Plaintiff will supplement this response as additional information becomes available or is produced in

8

discovery. Moreover, discovery is ongoing and S&P has not fully responded to Plaintiff's

discovery requests.

**Interrogatory No. 6:**

The Complaint alleges: "S&P understands the Issuer Pays business model creates conflicts of interest, but that these conflicts have been adequately managed by the company as demonstrated by the principles set forth in S&P's Code so as to ensure that its credit ratings are purely a function of credit analytics. Investors, government regulators, and other consumers depend on S&P to properly manage this conflict and reasonably interpret S&P's representations to understand that S&P does so." (Complaint ¶ 102.) Identify, to the full extent of the State AG's knowledge and awareness of such, all "[i]nvestors, government regulators, and other consumers depend on S&P to properly manage this conflict and reasonably interpret S&P's representations to understand that S&P does so."

**Answer to Interrogatory No. 6:**

Plaintiff repeats and restates its General Objections to this Interrogatory. Plaintiff

reiterates its General Objections No. 8 and 10 above, in that the information requested may not

be relevant for all purposes to which S&P might seek its admission at trial. In particular,

reliance on S&P's misrepresentations that it properly manages the conflicts of interest in its

Issuers Pays model by investors, government regulators, and other consumers is not an element

of Plaintiff's claim. Furthermore, Plaintiff is not obligated to prove the elements of its claim

with evidence that any person relied on S&P's misrepresentations. Moreover, Plaintiff notes that

if S&P's credit ratings of structured finance securities do not represent its independent and

objective opinion regarding the credit of the security, then the credit rating would have no utility.

Subject to and without waiving this objection, Plaintiff refers S&P to its answers to Interrogatory

Nos. 4 and 5. Plaintiff will supplement this response as additional information becomes

available or is produced in discovery. Moreover, discovery is ongoing and S&P has not fully

responded to Plaintiff's discovery requests.

PLAINTIFF STATE OF TENNESSEE
OFFICE OF THE TENNESSEE ATTORNEY GENERAL


Olha N. M. Rybakoff (TN BPR No. 24254)
Jeffrey L. Hill (TN BPR No. 16731)
Jennifer E. Peacock (TN BPR No. 22227)
CONSUMER ADVOCATE AND PROTECTION DIVISION
425 Fifth Avenue North
P.O. Box 20207
Nashville, Tennessee 37202-0207
Telephone: (615) 532-2590
Fax: (615) 532-2910
Email: olha.rybakoff@ag.tn.gov

Dated: April 28, 2014

10